# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

### Case No. 8:07-cv-1322-T-24-TGW

DEANA VONDRISKA and JENNIFER ANDREWS,
Individually and on behalf of other similarly situated
employees,

       Plaintiffs,

vs.

GERALD CUGNO, PAYCHEX BUSINESS SOLUTIONS, INC.,
and GEVITY HR, INC.,

       Defendants.

_____/

## DEFENDANT PAYCHEX BUSINESS SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant Paychex Business Solutions, Inc. ("PBS"), pursuant to Fed. R. Civ. P. Rule 56, moves for an order granting summary judgment in favor of PBS and against Plaintiffs Deana Vondriska and Jennifer Andrews (collectively "Plaintiffs").

### BACKGROUND

1. On January 9, 2008, Plaintiffs filed their Amended Complaint against Defendants seeking recovery of alleged unpaid overtime under the Fair Labor Standards Act ("FLSA").[1]

2. PBS is an employee leasing company. Defendant Gerald Cugno is a principal in Premier Mortgage Funding, Inc. ("Premier"), who was a PBS client.

3. In the Amended Complaint, Plaintiff Vondriska alleges that she "worked as a loan officer in Defendants' Middleburg Heights, Ohio branch...from January 26, 2005 to May 30,

---

[1] Plaintiff Vondriska originally sued Premier Mortgage Funding, Inc., for alleged unpaid overtime wages. Once Premier filed for bankruptcy protection, however, Plaintiffs turned their aim toward the Defendants in this separate lawsuit.

2005." *Pl's Amend. Compl. at ¶ 7.* Plaintiff Andrews alleged that she "worked as a loan officer in Defendants' Indianapolis, IN branch...from October 2004 to October 12, 2005." *Id.*

4.      Additionally, Plaintiffs, in conclusory manner, allege only that PBS "is an 'employer' within the meaning of the FLSA, 29 U.S.C. § 203(d)." *Pl's Amend. Compl. at ¶ 3.*

5.      On or about November 2, 2007, the Court granted PBS' motion to bifurcate discovery and ordered that Phase I discovery be limited to the issue of whether the Defendants were Plaintiffs' "employers" as that term is defined under the Fair Labor Standards Act. Further, the Court's November 2007 Order set March 3, 2008 as the Phase I discovery deadline.

6.      PBS now seeks an order for summary judgment because there is no genuine issue of material fact that PBS was *not* Plaintiffs' "employer" under the FLSA, and as such PBS is entitled to judgment as a matter of law.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see generally Celotex v. Catrett,* 477 U.S. 317, 322 (1986) (applying summary judgment standard). Not <u>every</u> factual dispute will bar summary judgment: "[T]he substantive law will identify which facts are material. Only disputes of facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of presenting evidence sufficient to demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Once the

moving party has met its burden, the party opposing summary judgment may not simply rely on the pleadings or mere denials of the allegations "[but] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party." *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1995) (citations omitted); *see Scanlon v. NASD*, 239 F.3d 1195, 1198 (11th Cir. 2001) (stating that the nonmoving party must satisfy her burden on summary judgment of presenting significant probative evidence which makes it necessary to resolve the parties' dispute at trial).

The nonmoving party is required to designate *specific* facts showing the existence of a genuine material issue for trial. *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995); *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 139 F. Supp. 2d 1374, 1378 (S.D. Fla. 2001) (stating that motion for summary judgment cannot be defeated absent an affirmative presentation of specific facts showing a genuine issue exists). If the evidence adduced by the non-movant is merely colorable or not significantly probative, summary judgment is appropriate. *Anderson*, 477 U.S. at 249-50.

### STATEMENT OF MATERIAL FACTS UPON WHICH THERE IS NO ISSUE TO BE TRIED[2]

1.      PBS is a Professional Employer Organization ("PEO"), otherwise known as an employee leasing company. *Decl. of C.  Hill at ¶ 4*.[3]  As a PEO, PBS provides payroll processing, employee benefits and human resource consulting to its clients. *Id.*

---

[2] PBS notes that, despite the fact that Plaintiff Vonsdriska had been properly and timely noticed for deposition, she was not deposed prior to the deadline for filing dispositive motions. Rather, on the Friday before the Monday when she was scheduled for deposition, Plaintiff Vondriska's counsel notified defense counsel, via e-mail, that Plaintiff Vondriska would not appear for deposition as her new employer did not agree to give her the day off.  Hence, Plaintiff Vondriska is being deposed after the deadline for PBS to submit its dispositive motion.

[3] The declarations and deposition transcripts relied upon by PBS in support of its motion are being filed separately and contemporaneous with the motion for summary judgment.

2.      PBS entered into an employee leasing agreement with Premier ("Client Services Agreement"). In particular, PBS would, in return for a fee to be paid by Premier, issue checks on its own account – in amounts dictated by Premier, pay related taxes to the appropriate governmental agencies, pay workers' compensation premiums to an appropriate carrier insuring Premier's employees, and pay unemployment compensation taxes. *Decl. of C. Hill at ¶ 5; see Client Services Agreement attached hereto as Exhibit "A".*

3.      However, at all times material, Premier retained its status as an employer of Plaintiffs. *Decl. of C. Hill at ¶ 6; see also Article 2.02 of Ex. "A" (Client Services Agreement).* As such, Premier exercised, and actually absolved PBS of, control over the day-to-day duties and job sites of Plaintiffs. *Id.*

4.      PBS in no way directed or controlled Plaintiffs' work, all of which was performed at Premier's (or its branch location) place of business and for the benefit of Premier, not PBS. *Decl. of C. Hill  at ¶ 12; Andrews' Depo. at p. 41, l 24-p.42, l 3; p. 43, l 24-p. 44, l 2.* At all times, Premier or its branch office exercised exclusive control over Plaintiffs and their employment. *Decl. of C. Hill at ¶ 12.*

5.      PBS did not otherwise play any role in the manner and means by which Premier's employees performed or accomplished the work assigned to them by Premier. *Decl. of C. Hill at ¶ 10.*

6.      PBS did not own or control the facility or locations where Premier was located, nor did PBS own or control the equipment and facilities used by Plaintiffs while working at Premier. *Decl. of C. Hill at ¶ 13.*

7.      Plaintiffs performed a job that was integral to Premier's business as a mortgage company, but not to PBS's business as an employee leasing/payroll services company. *Decl. of C. Hill at ¶ 18.*

8.      In regard to the actual working relationship between PBS and Premier,  PBS did not, at any time, (a) recruit, (b) interview, (c) evaluate, (d) place, (e) assign, (f) determine the rate of pay for, (g) hire or fire, (h) direct or control or assign responsibilities and tasks to, or (i) supervise, or evaluate the work of Plaintiffs. *Decl. of C. Hill at ¶14; Andrews' Depo. at p. 45, l 9-11, 15-21; p. 43, l 24-p. 44, l 2; p. 44, l 3-4.*  In addition, PBS paid the leased employees at Premier according to the directions provided by Premier. *Decl. of C. Hill at ¶14.*  Further, at no time during the business relationship between Premier and PBS was PBS required to pay Premier employees due to Premier's failure to pay its employees. *Id. at ¶ 17.*

9.      The relationship between Plaintiffs and PBS, similar to the one between PBS and any other leased employee at Premier, was to last only as long as Premier wanted it to last.  Once Premier cancelled its relationship with PBS, PBS' relationship with the leased employees would end; however, if PBS cancelled its relationship with Premier, the leased employees would continue to work at Premier as always. *Id. at ¶ 15.*

10.     With respect to the leased employees, Premier or its branch offices *solely and exclusively*: (a) recruited and hired them (hiring whichever person they chose), and determined how many persons to hire, (b) interviewed them, (c) trained them as to their job duties, (d) set their hours and work schedule, (e) maintained all records with respect to when the employee started his/her workday and when such employee ceased working on that day, (g) determined job description, (h) determined whether any employee would work more than 40 hours in any given workweek, and if so, how many hours the employee would work, (i) decided whether or not to

report any overtime hours worked to PBS, or to conceal such information from PBS, (j) managed the worker's day-to-day activities, and the details, method and mode of work for each worker, (k) determined what wages the employee would receive, and whether and when raises would be given, (l) determined how long a worker would be employed as a leased employee, (m) determined how much, if any, sick pay, vacation pay, bonus pay or commissions would be paid to workers, (n) determined for what offenses a worker would be discharged, (o) assigned the workers new tasks, and (p) determined the safety of any equipment to be used by the workers. *Id. at ¶ 16.*

11.     With respect to PBS' relationship with Premier, Crystal Starr was PBS' main Human Resources contact for Premier's corporate office. As part of her responsibilities, Ms. Starr provided human resources-related training for managers and supervisors at Premier's corporate office. The training sessions began in or around September 2005. *Decl. of C. Starr at ¶ 4.*

12.     Neither Ms. Starr nor anyone at PBS ever provided training to Premier employees, including loan officers, on the manner in which they were to perform their respective job duties. *Andrews' Depo. at p. 37, l 17-20.* Ms. Starr had no independent knowledge of the specific job duties of loan officers at Premier. *Decl. of C. Starr at ¶ 5.*

13.     One example of the training that Ms. Starr provided to Premier was Fair Labor Standards Act training. This training was provided only to Premier managers and supervisors. In conjunction with the FLSA training, Ms. Starr provided a pamphlet to the managers and supervisors at Premier's corporate office on the general requirements of the FLSA. A copy of the training pamphlet is attached to Ms. Starr's declaration as Exhibit "1." The pamphlet makes clear

that the information is not intended to be, nor should it be used as, legal or accounting advice. *Id. at ¶¶ 6, 7.*

14.     At no point during the relationship between Premier and PBS did Ms. Starr or anyone at PBS make decisions for Premier on exemption classification for their loan officers or any other employees.  Rather, PBS only provided the Premier corporate office with relevant resources and best-practices advice to assist them in making the classification determinations. *Id. at ¶ 12.*

17.     PBS did not create a specific Employee Handbook or job descriptions for Premier. *Id. at ¶ 13.*

18.     Ms. Starr had no contact with either Plaintiff Vondriska or Andrews during the relationship between Premier and PBS.  *Id. at ¶ 14; see also Vondriska's Resp. to PBS' Interr. #5; Andrews' Depo. at p. 35, l 12-18; p. 29, l 5-8; p. 32, l 3-9.*

19.     With respect to Plaintiff Andrews, it was her branch manager, not PBS, who: (a) hired her to work as a loan officer at Premier *(Andrews' Depo. at p. 20)*; (b) determined and explained to Andrews her compensation structure as a loan officer *(Andrews' Depo. at p. 23, l 20-25; p. 26, l 10-12; p. 45, l 21-25)*; (c) trained other loan officers at Andrews' branch *(Andrews' Depo. at p. 37, l 12-16)*; (d) instructed Andrews as to the operations of the branch *(Andrews' Depo. at p. 38, l 21 - p. 39, l 6)*; and (e) assigned Andrews her work duties and work hours *(Andrews' Depo. at p. 22, l 20-23; p. 39, l 10-21)*.

## ARGUMENT

Based upon the undisputed record evidence in this case, PBS is entitled to summary judgment as a matter of law.  Plaintiffs' claims against PBS for alleged unpaid overtime fail as a matter of law because PBS was not Plaintiffs' "employer."  Indeed, recent decisions out of the

Eleventh Circuit and the Middle and Southern Districts of Florida[4] support PBS's position and require an order of summary judgment in PBS' favor.

### A.    The Fair Labor Standards Act

The FLSA prohibits employers from employing any worker for a workweek longer than 40 hours unless the employee receives compensation for the excess hours worked at a rate generally not less than one and one half times the worker's regular rate of pay.  29 U.S.C. § 207(a)(1).  Section 203(d) of the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." The FLSA further defines "employee" as "any individual employed by an employer." *Id.* at § 203(e)(1).  To "employ" means "to suffer or permit to work." *Id.* at § 203(g).  Here, Plaintiffs claim that PBS is liable for alleged unpaid overtime wages because PBS is an "employer" under the FLSA. However, Plaintiffs' contention is incorrect.

A determination of whether an entity is an employer under the FLSA is a question of federal law. *Antenor v. D&S Farms*, 88 F.3d 925, 929 (11th Cir. 1996).  The Eleventh Circuit has determined that whether an employment relationship exists under the FLSA must be judged by the "economic realities" of the individual case and not by traditional common-law principles.  *Id.* In examining the "economic realities" of the individual case, courts must look at the surrounding circumstances of the whole activity.  *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33

---

[4] See *Jeanneret v. Aron's East Coast Towing, Inc., et al.*, Case No. 01-8001 CIV-HURLEY (S.D. Fla. Jan. 29, 2002) – **as affirmed by the Eleventh Circuit on November 15, 2002,** (both decisions attached as Exhibit "B"); *Salley v. PBS of Central Florida, Inc.*, Case No. 6:07-cv-1517-Orl-31KRS (M.D. Fla. Dec. 12, 2007) (opinion attached as Exhibit "C"); *Neto v. PBS of Central Florida, Inc.*, Case No. 03-61751-civ-HUCK (S.D. Fla., April 22, 2004) (opinion attached as Exhibit "D");. Notably, PBS' counsel has previously provided to Plaintiffs' counsel copies of all relevant case decisions cited above.  Notwithstanding, Plaintiffs and their counsel have decided to drag PBS into this lawsuit and continue with the litigation, with no basis whatsoever, in an obvious attempt to extract money from the proverbial deep pocket.

(1961); *see Aimable v. Long & Scott Farms, Inc.*, 20 F.3d 434, 439 (11th Circuit 1994).  Whether or not the parties intended to create an employment relationship – or what labels were placed on the relationship (i.e., employee vs. independent contractor) – is irrelevant to the economic realities test.  *Donovan v. New Floridian Hotel*, 676 F.2d 468, 471 (11th Cir. 1982).

    *B.    Determination of Employment Status*

In determining whether an entity is an employer under the FLSA, courts must look at the economic realities test which examines: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities.  See, *Salley,* at p. 4 (citing *Antenor,* 88 F.3d at 932).  Importantly, it is the actual working relationship between the parties – the way the parties conducted themselves in the instant case - that is determinative of whether Plaintiffs were economically dependent on PBS.  *Antenor,* 88 F.3d at 937-38.

    *C.    Agreement between PBS and Premier*

PBS entered into an agreement with Premier whereby PBS agreed to provide, and Premier agreed to pay for, employee leasing services, including payroll administration functions.  *Decl. of C. Hill at ¶ 5.*  Notably, the employee leasing agreement at issue in the *Neto, Salley,* and *Jeanneret* cases is of the same type that is present in the instant case and that is customary in the industry.

The *Jeanneret* decision, authored by Judge Hurley and affirmed by the Eleventh Circuit, as well as the *Neto* and *Salley* decisions, are directly applicable to the facts of this case. In each of those cases, the Court examined the economic realities test against a backdrop of particular facts that are substantially similar to the instant case. The plaintiff in each case argued that the language of the employee leasing agreement established that the employee leasing company was an employer under the FLSA. However, the *Jeanneret, Neto,* and *Salley* decisions rejected the plaintiffs' arguments and relied on the actual working relationship between the parties in holding that the employee leasing company was not an employer under the FLSA. A similar finding is required in this case.

D.   *PBS is not liable to Plaintiffs under the FLSA because PBS was not Plaintiffs' "Employer"*

PBS is entitled to summary judgment as a matter of law because PBS is not liable to Plaintiff under the facts of this case. PBS is not liable to Plaintiff for alleged unpaid overtime under the FLSA because PBS was ***not*** Plaintiff's employer. An analysis of the economic realities in this case undisputedly shows that none of the factors weigh in favor of a finding that PBS acted as Plaintiff's employer in this case.[5]

a.   <u>Nature and Control of Workers</u>

The first factor in the determination of joint employment status involves the nature and degree of the alleged employer's control of the employee. *Jeanneret at p. 9.* It is clear that in the instant case PBS exercised ***no*** degree of control over Plaintiffs.

---

[5] Tellingly, Plaintiff's only allegations of "employment" by PBS are conclusory statements that PBS is "an employer under the" FLSA, and that the Plaintiffs "worked as loan officers for one or more of the Defendants..." However, Plaintiff's statements are not supported by ultimate facts or any record evidence presented in support of summary judgment.

As expressed in *Jeanneret*, indicia of control include determining the number of workers hired for a job, when the work should begin on a particular day, which workers should be assigned specific tasks, and whether a worker should be disciplined or retained. *Jeanneret at p. 9 (citing Antenor*, 88 F.3d at 933). Here, PBS never engaged in any direction or control over Plaintiffs. PBS did not determine (a) the number of workers hired to work at Premier, (b) when Plaintiffs' work day would start and finish, (c) to what tasks Plaintiffs would be assigned or which workers should be assigned certain tasks, or (d) whether Plaintiffs should be disciplined or retained. *See Decl. of C. Hill at ¶ 12, 16; Andrews' Depo. at p. 41, l 24-p. 42, l 3; p. 43, l 24-p.44, l 2.*.

Rather, Premier or its branch office exercised sole control of its employees including Plaintiffs. *Decl. of C. Hill. at ¶ 12*. Premier or its branch office solely and exclusively determined the number of workers hired for a job, set Plaintiffs' schedule, determined Plaintiffs' job duties, and managed Plaintiffs' day-to-day activities. *Id. at ¶ 16; Andrews' Depo. at p. 39, l 10-21; p. 44, l 3-4; p. 45, l 21-25*. Indeed, Premier exercised all control and specifically **absolved PBS of control over the day-to-day duties and job sites of Plaintiff**. *Decl. of C. Hill at ¶ 6*.

The undisputed record evidence demonstrates that there is no genuine issue that Premier exercised exclusive control over Plaintiffs' employment and consideration of this factor supports a finding that PBS was not Plaintiffs' employer.

      b.   <u>Degree of Supervision of the Work</u>

The second factor to consider in the determination of employer status is the putative employer's degree of supervision of the work. *Jeanneret at p. 10*. A review of the record evidence shows that PBS did not, in any way, supervise Plaintiffs' work.

In particular, PBS did not monitor, oversee, or supervise Plaintiffs' work performance. *Decl. of C. Hill at ¶¶10-11, 14; Andrews' Depo. at p. 44, l 3-4.* Nor did PBS determine Plaintiffs' job duties or responsibilities. *Decl. of C. Hill at ¶ 16.* Rather, Premier or its branch office determined Plaintiffs' job duties and directly supervised Plaintiffs' work. *Id. at ¶¶ 11, 16; Andrews Depo. at p. 23, l 20-25; p. 26, l 10-12; p/ 44, l 3-4 .* There is no record evidence to the contrary. Thus, the undisputed record evidence demonstrates that there is no genuine issue that PBS did not supervise Plaintiffs' work at Premier and consideration of this factor supports a finding that PBS was not Plaintiffs' employer.

     c.    <u>Right to Hire, Fire, or Modify Worker's Employment Conditions</u>

The third factor in the applicable analysis of joint employment relates to whether the putative employer possessed the right to hire, fire, or modify the worker's employment conditions. *Jeanneret at pp. 11-12.* In the instant case, PBS did not hire, fire, discipline or reassign workers employed with Premier. *Decl. of C. Hill at ¶¶ 11, 14; Andrews' Depo. at p. 45, ll 9-11, 15-17.* Rather, Premier had exclusive right to recruit, interview, hire, discipline, and transfer the employees, and set their working schedules, sick pay, vacation pay, bonuses and severance pay. *Decl. of C. Hill at ¶ 16.* As stated by Plaintiffs in their Responses to Interrogatories, and by Plaintiff Andrews in her deposition testimony, Plaintiffs were actually hired by their Branch Manager. *See, Vondriska's Resp. to PBS' Interr. # 7, and Andrews' Resp. to Cugno's Interr. # 2; Andrews' Depo. at p. 20, l 21-25; p. 45, l 9-11.* No record evidence exists to show that pursuant to the **actual** working relationship between PBS and Premier, PBS in fact had the right to hire, fire or modify Plaintiffs' working conditions, or ever exercised that right. *See Jeanneret* at p. 12. As such, consideration of the third factor supports a finding that PBS was not Plaintiffs' employer.

d.    Power to determine pay rates or methods of payment

The fourth factor in the analysis of whether an employment relationship exists is the degree to which the putative employer has the power to determine the pay rates or the methods of payments of the workers. *Jeanneret* at p. 12. Here, PBS did not, and had no right to, determine Plaintiffs' pay rates or methods of Plaintiffs' payment. *See Decl. of C. Hill. at ¶ 16; Andrews' Depo. at p. p. 23, l 20-25; p. 35, l 12-18.* Indeed, Plaintiff Andrews acknolwedges that her branch manager - Karen Thompson - was the person who determined and explained the commission compensation structure to Plaintiff Andrews, and determined how much Plaintiff Andrews would be paid. *Andrews' Depo. at p. 45, l 21-25; p. 26, l 14-16.* Further, Plaintiff Andrews admits that she did not discuss with PBS any issues regarding her pay while employed with Premier. *Id., at p. 35, l 12-18.* Plaintiff Vondriska, in her responses to Defendant Cugno's Second Set Interrogatories, states that she entered into an agreement with her branch manager that addressed her compensation as a loan officer at Premier. *See Vondriska's Resp. to # 12.*

Since there exists no record evidence that PBS was the entity that actually determined Plaintiffs' pay rates or method of pay, consideration of this fourth factor supports a finding that PBS was not Plaintiffs' employer.

e.    Preparation of payroll and payment of wages

The fifth factor in determining whether there exists an employment relationship is whether the alleged employer was involved in the preparation of payroll and the payment of wages to workers. *Jeanneret* at p. 13. Here, there is no dispute that PBS was the entity that made the direct payment of wages to Premier employees, at the direction of Premier, and paid

the applicable taxes and worker's compensation premiums.[6] However, as in *Jeanneret*, the tasks performed by PBS were purely ministerial and administrative tasks of cutting payroll checks to Premier's employees, paying taxes to the appropriate government agencies, and paying worker's compensation premiums to an appropriate carrier.

Additionally, there is no record evidence to show that PBS made payroll payments regardless of whether it first received corresponding funds from Premier. In fact, the record evidence shows that PBS did not, at any time, advance payroll funds to Premier employees without first receiving the funds from Premier. *See C. Hill Depo Tr. at p. 65; Decl. of C. Hill at ¶ 17.* Thus, consideration of this factor supports a finding that PBS was not Plaintiffs' employer.

f.    Ownership of facilities where work occurred

The sixth factor to consider in the determination of whether an employment relationship exists is whether the alleged employer owns the facilities where the relevant work occurred. *Jeanneret* at p. 15. The undisputed record evidence shows that PBS did not own the facility where Premier is located and where Plaintiffs performed their work. *Decl. of C. Hill at ¶ 13.* Rather, Premier or one of its branches, not PBS, owned or controlled all the facilities where Plaintiffs worked. There is no record evidence to the contrary. As such, this factor favors a finding that PBS was not Plaintiffs' employer.

g.    Performance of a line job integral to Defendant's business

The seventh factor in the determination of an employment relationship is whether the worker performed a line job integral to the putative employer's business. Here, there is no record evidence that Plaintiffs performed a job that was integral to PBS's business. In fact, it is

---

[6] Interestingly, the record evidence as to whether Plaintiff Vondriska received any payment of wages from PBS is at best unclear. Plaintiffs allege that Vondriska worked from January 2005 until May 2005. There is no record evidence, however, of payments being made by PBS to Vondriska during this time period.

undisputed that Plaintiffs' jobs as loan officers were integral to Premier's business (mortgage company) but not to PBS's business (employee leasing/payroll services). *Decl. of C. Hill at ¶ 18.*

Since Plaintiffs' jobs were not an integral part of PBS's employee leasing business, this factor supports a finding that PBS was not their employer.

> h.   Investment in equipment and facilities

The eighth and final factor of the economic realities test is the relative degree of investment in equipment and facilities by Premier and PBS.   Here, Premier (or one of its branches) owned or controlled all the equipment and facilities used by Plaintiffs while working at Premier. *See Decl. of C. Hill at ¶ 13.*   There is no record evidence to the contrary.   Thus, this factor supports a finding that PBS is not an employer.

A close examination of the undisputed record evidence in this case demonstrates that PBS was not Plaintiffs' employer.   Thus, PBS is not liable under the FLSA for any alleged unpaid overtime.   Plaintiffs -- or, more accurately, their counsel -- simply base their claim that PBS was their employer on conclusory, unsupported statements.[7]

The *Astrowsky v. First Portland Mortgage*, 887 F. Supp. 332 (D. Maine 1995) case is especially instructive on the present issue. *Astrowsky* involved the determination of whether an employee leasing company should be considered an employer as defined under multiple statutes, including the Family Medical Leave Act (FMLA).[8]   The employee in *Astrowsky* had worked as a loan officer for a mortgage company for approximately two years when the company decided

---

[7] Indeed, when asked at her deposition why she was suing PBS, Plaintiff Andrews gave the following, quite telling, response:  "I don't know." *Andrews' Depo. at p. 49, l 5-9.*

[8] The definition of "employer" under the FMLA and the FLSA are identical. *See* 29 U.S.C. § 2611(3) ("The terms 'employ,' 'employee' . . . have the same meanings given such terms in subsections (c), (e), and (g) of [29 U.S.C. 203 – the FLSA]").

to use the employee leasing company, Atlantic Staff Management ("Atlantic"). Pursuant to the leasing agreement between the company and Atlantic, Atlantic did not direct, control, or supervise the employee's work; however, Atlantic did pay his commission checks and made all the withholdings from his pay checks. *Id.* at 334.

Despite the plaintiff's contention that Atlantic was a joint employer, the *Astrowsky* court agreed with Atlantic's contention that it did not exercise sufficient control over the plaintiff to be considered his employer. *Id.* at 336. In reaching its decision, the *Astrowsky* court considered the extent of the leasing company's "control over" the employee, referring to the control over the means and manner in which the employee performed his job. *See id.* (citing *Amarnare v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 611 F. Supp. 344 (S.D.N.Y. 1984) (stating that when considering whether an entity is an employer "the extent of the employer's right to control the means and manner of the worker's performance is the most important factor.")).

In holding that Atlantic was not plaintiff's "employer", the court emphasized that (1) while Atlantic processed the plaintiff's checks and made necessary withholding of taxes, it did not exercise any control of him as an employee; (2) all of the terms and conditions of the plaintiff's employment were set out in his contract with the mortgage company, including his commission rate, daily work schedule, and vacation benefits; and (3) the plaintiff had been leased to the mortgage company for the long term and was in essence a permanent employee of the mortgage company. *Id.* at 336-37.

Here, PBS's relationship with Plaintiffs (who, interestingly, also held the position of loan officers in a mortgage company) closely resembles the relationship which the *Astrowsky* court determined did not rise to the level of an employer-employee relationship. Similar to the employer in *Astrowsky*, Premier retained its status as Plaintiffs' employer and exercised control

over the day-to-day job duties and job sites of Plaintiffs. PBS in no way directed or controlled Plaintiffs' work. *Andrews' Depo. at p. 23, l 20-25; p. 26, l 14-16; p. 37, l 17-20; p. 38, l 21 - p. 39, l 6; p. 39, l 10-21; p. 41, l 24 - p. 42, l 3; p. 43, l 24 - p. 44, l 2; p. 45, l 9-11, and l 21-25; p. 60, l 19-25.* Instead, Premier or its branch offices exercised exclusive control over Plaintiffs. Further, PBS did not at any time evaluate, hire, discipline, train, assign responsibilities or tasks to, or fire Plaintiffs. *Id.* Accordingly, under the rationale of *Astrowsky,* and *Neto,* and *Salley,* and *Jeanneret,* PBS was not Plaintiffs' employer.[9]

> E.     *PBS' Retention, under Florida law, of Certain Rights Does Not Make PBS Plaintiffs' Employer under the FLSA*

PBS anticipates that Plaintiffs, like the plaintiffs in *Salley, Neto* and *Jeanneret,* will argue that under the Client Services Agreement between PBS and Premier, PBS retained certain rights that demonstrate it exercised control over the nature of Plaintiffs' employment.[10] As the Courts held in the prior three decisions, Plaintiffs' argument fails as a matter of law.

First, PBS only performed a ministerial and administrative role in the payroll process. It is undisputed that Premier, not PBS, determined what Plaintiffs and their co-workers would be paid, what the pay periods would be, and the presence or absence of sick pay, vacation pay, commissions, bonuses, severance, etc. The *Aimable* court squarely addressed this issue in the

---

[9] Further, Plaintiffs' (including the opt-in individuals) responses to the various discovery requests propounded on them support a finding that PBS was not their employer. Aside from the inadmissibility (as discussed further below) of the Plaintiffs' self-serving "Preliminary Statement" in their responses to interrogatories, Plaintiffs fail to establish any connection to PBS. Plaintiffs state that they entered into compensation arrangements with their respective branch managers, and that they were hired, fired and supervised by their branch managers. *Vondriska's Resp. to PBS' Interr. # 7, 8; Andrews' Resp. to Cugno's Interr. # 2, 5 and 6; Vondriska Resp. to Cugno's 2nd Interr. # 12.* Hence, Plaintiffs' responses to interrogatories support PBS' claim that it was not their employer under the FLSA.

[10] Despite the fact that several plaintiffs have attempted to pursue this flawed argument with no success, PBS believes Plaintiffs, left with no other alternative, will seek to oppose summary judgment by also relying on this misguided theory.

following excerpt, containing the facts that the panel deemed most material to their finding that the putative employer was not a joint employer:

> Most importantly, Miller, not Long & Scott [the putative employer], determined what wages to pay appellants; which workers to pay on a piece-rate basis and which to pay on an hourly basis; and when (and if) to increase the worker's wages (either by charging the farmers more, decreasing the number of laborers, or reducing his expenses or his profit), Long & Scott had no direct or indirect power to set or increase appellants' wages.
> *Aimable,* 20 F.3d at 442.

The factor involving PBS' statutory and contractual obligations to pay wages is only material to the extent that it sheds light on whether Plaintiffs were *economically dependent* upon PBS *for their livelihood. See Antenor,* 88 F.3d at 933-934. Here, PBS' obligation to pay the covered employees their wages is akin to the infrequent and occasional exercise of control discussed in *Aimable* and characterized as "de minimis." Indeed, pursuant to Article 7 of the Agreement between Premier and PBS, if Premier ever failed to fund the payroll, PBS would immediately terminate its relationship with Premier.   Nonetheless, Plaintiffs' employment conditions would not be affected at all as they would continue to work for Premier.   In fact, Plaintiff Andrews concedes that her working conditions and terms remained unchanged after PBS took over Premier's payroll administration functions from the prior employee leasing company, Gevity HR. *Andrews' Depo. at p. 66, l 6-12.*

Second, Plaintiffs are unable to oppose summary judgment on the grounds that PBS exercised authority over Plaintiffs by providing Premier with human resources consulting and assistance.   In particular, Plaintiffs are expected to argue that PBS made the final decision regarding FLSA exemption classifications for Plaintiffs and other loan officers.   There is,

however, no record evidence to support Plaintiffs' claims. Indeed, the undisputed record evidence shows that PBS did not make any classification decisions.[11] *See Decl of C. Starr ¶ 12.*

The fact that PBS may have made available to Premier some human resource assistance does not demonstrate, at any level, any authority to hire, fire, or discipline Premier employees. Further, PBS is not transformed into Plaintiffs' employer under the FLSA simply because it may have conducted various employment-related training sessions for Premier managers and employees. Indeed, Plaintiff Andrews admits that she received **no** training from PBS. *Andrews' Depo. at p. 37, l 17-20.* Simply providing human resources assistance does not create an employer. *See, e.g., Jeanneret, Neto, and Salley.*

Finally, as Plaintiffs allege in their Amended Complaint, the only reason PBS was brought into this lawsuit was due to deposition testimony by Gerald Cugno (CEO of Premier) and Jeremy Lube (Operations Chief for Premier), in a separate and distinct lawsuit, wherein they allegedly implicated PBS. As a result, PBS anticipates that Plaintiffs will attempt to oppose summary judgment by relying on Messrs. Cugno and Lube's deposition testimony in the separate action.[12] Plaintiffs, however, in opposing PBS' motion for summary judgment, are precluded from relying on Messrs. Cugno and Lube's deposition testimony, taken in a separate action, in which PBS was not a party, nor had the opportunity to cross-examine either individual.

Federal Rule of Civil Procedure 32(a) provides that a deposition may be used against any party who was present or represented at the taking of the deposition or had reasonable notice thereof. *See* FED. R. CIV. P. 32(a); *see also, Nippon Credit Bank, Ltd. v. Matthews,* 291 F. 3d

---

[11] Notably, even if it can be somehow argued that PBS did participate, to some extent, in the classification decisions, that fact alone is woefully insufficient to find PBS was Plaintiffs' employer under the FLSA, particularly in light of the remaining economic realities factors.

[12] Interestingly, Plaintiffs decided not to depose either Mr. Cugno or Mr. Lube in this action.

738 (11th Cir. 2002).   Subsection (a)(4) of Rule 32 further states that a deposition taken in a *prior lawsuit* may only be admitted in a subsequent suit if the suits involve identical subject matter and are between identical parties, those parties' representatives, or their successors in interest.   *See* FED. R. CIV. P. 32 (a)(4);   *see also, In re Beiswenger Enter. Corp. v. Carletta*, 46 F. Supp. 2d 1297, 1299 (M.D. Fla. 1999)(stating, "[d]eposition testimony from another action may be relied upon on summary judgment where...the case involved the same parties and subject matter.").   Also, deposition testimony taken in a previous proceeding is admissible in a different proceeding only if the party against whom it is offered was provided with an opportunity to examine the deponent.   *See Nippon*, 291 F. 3d at 751 (citing FED. R. EVID. 804(b)(1));   *see also, In re Paramount Payphones, Inc.*, 256 B.R. 341 (Bkrtcy. M.D. Fla. 2000)(court disallowed trustee from using deposition from prior action); *Mid-West Nat. Life Ins. Co. of Tenn. v. Breton*, 199 F.R.D. 369 (N.D. Fla. 2001)(court disallowed introduction and use of deposition against a second defendant where deposition of first defendant was taken in action prior to second defendant being added as a party).

Here, PBS was not a party to the prior lawsuit between Plaintiffs and Premier, nor did PBS have notice of the deposition or the opportunity to examine Mr. Cugno or Mr. Lube.   As such, their deposition testimony is not admissible against PBS in this matter.[13]   Once Mr. Cugno's and Mr. Lube's alleged testimony is excluded from the analysis, Plaintiffs have absolutely no record evidence to refute or oppose summary judgment in PBS' favor.

---

[13] Further, Plaintiffs cannot achieve an end-run around this prohibition by reciting or summarizing Mr. Cugno's or Mr. Lube's deposition testimony, as they attempt to do in their Amended Complaint or their Preliminary Statement to their Responses to Interrogatories, particularly when, incredibly, Plaintiff Andrews *admits* she has no independent knowledge of their testimony and that the Preliminary Statement was written by her attorney. *Andrews' Depo. at p. 55, l 11-13; p. 57, l 3-5 and 13-15.* The testimony of Cugno and Lube is wholly inadmissible at this stage.

Plaintiffs cannot identify for this Court any specific record evidence to create a triable issue that PBS is a joint employer under the FLSA.  Importantly, the Eleventh Circuit, two Southern District judges, and one Middle District judge, have already addressed the issues at bar - and rejected plaintiffs' contentions - in strikingly similar factual scenarios (and two of those cases involved PBS as a defendant).  Here, the overwhelming, undisputed evidence shows that under the correct legal analysis - the "economic realities" test - PBS was *not* Plaintiffs' employer under the FLSA.  Accordingly, PBS is entitled to summary judgment.[14]

## CONCLUSION

Upon examination of federal law and the factors that encompass the economic realities test for joint employment status, it is clear that there is no genuine issue that PBS was not Plaintiffs' employer under the FLSA.  Indeed, Plaintiffs are unable to present even a scintilla of evidence to defeat summary judgment.  Accordingly, PBS is entitled to summary judgment as a matter of law.  Further, PBS is entitled to an award of its attorneys' fees and costs incurred in bringing this motion and defending this action.

[rest of page intentionally left blank]

---

[14] Additionally, due to the facts that (a) the issue at bar has previously been addressed by multiple courts, under almost identical factual scenarios, (b) the courts have consistently held that PBS (or other employee leasing companies) are not employers under the FLSA, (c) Plaintiffs have not even attempted to introduce different evidence or legal theories, and admit under oath that they have no additional information, and (d) PBS provided Plaintiffs' counsel, at the outset of this suit, with copies of all relevant case law, PBS is entitled to an award of its attorneys' fees and costs incurred in defending this frivolous action.

WHEREFORE, Defendant Paychex Business Solutions, Inc., respectfully requests this Court enter an order of summary judgment in favor of PBS and against Plaintiffs, and award such further relief as is just and proper.

Respectfully submitted,

HOLLAND & KNIGHT LLP

701 Brickell Avenue, Suite 3000
Miami, FL 33143
Tel: (305) 789-7709
Fax: (305) 789-7799

_____
Edward Diaz
Fla. Bar No. 988091
edward.diaz@hklaw.com

*Attorneys for Defendant*
*Paychex Business Solutions, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

Matthew H. Morgan , Esq.
Nichols Kaster & Anderson, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
*Attorneys for Plaintiff*


Mathew Fenton, Esq.
Wenzel & Fenton, P.A.
633 N. Franklin Street, Suite 500
Tampa, Florida 33602
*Attorneys for Plaintiff*

Benjamin J. Mollo, Esq.
3001 Executive Drive,
Suite 330
Clearwater, FL 33762
*Attorney for Defendant Cugno*

s/Edward Diaz
ediaz@hklaw.com

# 5220110_v1