IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

---

Deana Vondriska, Jennifer Andrews
Individually and on behalf of other similarly
situated employees,

    Plaintiffs,                              Case No.: 8:07-cv-1322-T-24-TGW

vs.

Gerald Cugno, Paychex Business Solutions, Inc.
and Gevity HR, Inc.,

    Defendants.

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
PAYCHEX BUSINESS SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Defendant Paychex Business Solutions, Inc.'s ("PBS") motion predictably goes to great lengths to describe all of the services PBS allegedly does not provide to Premier Mortgage Funding, Inc. ("Premier"). As if they were meaningless, PBS goes so far as to ask this Court to ignore the Client Services Agreement—the very document that establishes PBS's duties and obligations to Premier—as well as the statutory obligations that companies like PBS must meet to be considered an employee leasing company. Instead, PBS asks this Court to follow certain distinguishable case law and grant PBS's motion with little or no consideration of the reality of the relationship or material facts like Craig Hill's acknowledgement under oath that at times PBS shared employer responsibilities with Premier or Plaintiffs W-2 forms that identify PBS, not Premier, as their employer.

1

PBS's motion for summary judgment should be denied. The material facts set forth in Plaintiffs' motion for partial summary judgment against PBS renders PBS an employer under the Fair Labor Standards Act ("FLSA"). At the very least, however, the material disputed facts shown herein warrant a denial.

## FACTS THAT CHALLENGE DEFENDANT PBS'S "STATEMENT OF MATERIAL FACTS UPON WHICH THERE IS NO ISSUE TO BE TRIED"

PBS relies heavily on self-serving Declarations of Craig Hill and Crystal Starr. Hill and Starr were deposed and provided testimony on the very topics that their Declarations cover yet there is no reference by PBS to their depositions at all. Some of the averments contained in their Declarations are inconsistent with, and disputed by, their deposition testimony, the deposition testimony of Defendant Gerald Cugno (Premier's Chief Executive Officer) and Jeremy Lube (Premier's Director of Operations), the Client Service Agreement ("CSA") language, PBS's statutory obligations, or the documentary evidence largely produced by PBS.[1]

**PBS Paragraph 4:**

"PBS in no way directed or controlled Plaintiffs' work...At all times, Premier or its branch office exercised exclusive control over Plaintiffs and their employment."

(Dkt. 96 at p. 4.)

**Additional Material Facts:** Florida law required PBS to reserve a right of direction and control over leased employees. Fla. Stat. § 468.525(4)(a). The CSA provides:

PBS retains a right of direction and control over Covered Employees assigned to Client's worksite.

---

[1] While certain facts referenced in Plaintiffs' motion for partial summary judgment against PBS are discussed herein, some are not. In the interest of brevity, Plaintiffs are not reciting all such facts but incorporating the same into this brief. Plaintiffs ask the Court to take judicial notice of all such material facts.

(Ex. D to Plaintiffs' motion for partial summary judgment, § 8.01.)[2] According to Cugno, PBS handled employee complaints and provided orientation and training for Premier Mortgage's staff. (Gerald Cugno Dep. at 31-36.) By the summer of 2005, Starr agreed to perform weekly trainings at Premier's corporate offices. (Crystal Starr Dep. at 48-49, 101.) Several of the training sessions Starr facilitated were offered to the entire workforce. (Id. at 21-22.) According to Lube, PBS provided Premier with a company handbook that was distributed to all Premier employees and that every employee was required to follow. (Jeremy Lube Dep. at 57-58.)

On April 20, 2006, a memo was distributed to Premier employees from PBS and Premier discussing length of employee breaks. (Ex. P to Plaintiffs' motion for partial summary judgment.) Furthermore, the CSA stated that Premier was to report allegations of employee misconduct or workplace safety violations to PBS. (Craig Hill Dep. at 74.) Hill testified that PBS has its clients report these incidents to avoid the litigation costs from a potential lawsuit. (Id.)[3]

### PBS Paragraph 5:

"PBS did not otherwise play any role in the manner and means by which Premier's employees performed or accomplished the work assigned to them by Premier"

(Dkt. 96 at p. 4.)

### Additional Material Facts: The CSA provides:

PBS retains a right of direction and control over Covered Employees assigned to Client's worksite.

---

[2] Unless instructed by the Court, copies of exhibits and deposition transcript pages that were filed in connection with Plaintiffs' motion for partial summary judgment against PBS on May 1, 2008 are not being filed again as part of Plaintiffs' memorandum of law in opposition to PBS's motion for summary judgment.

[3] This statement supports Plaintiffs' contention that PBS is Plaintiffs' employer under the FLSA. If Hill did not believe PBS has liability as Plaintiffs' employer, there is no reason for PBS to require Premier to report incidents of employee misconduct or workplace safety violations.

3

(Ex. D to Plaintiffs' motion for partial summary judgment, § 8.01.) The CSA also indicates that Premier was to cooperate with PBS in the implementation of human resources policies and procedures. (Hill Dep. at 72; Ex. E to Plaintiffs' motion for partial summary judgment, § 2.10) And, PBS was required by Florida law to retain these rights. Fla. Stat. § 468.525(4)(a). Hill explained that PBS provides resources and guidance to help their clients remain in compliance with the rules and regulations applicable to the client's business. (Id. at 72-73.)

PBS assumed a supervisory role by acting as Premier's HR department. Cugno stated that PBS ran Premier's HR department. (Cugno Dep. at 29.) According to Cugno, if people had problems, they reported them to the HR department, which was run by PBS. (Id. at 29-30.) Lube also stated that he was under the impression that PBS performed HR services on Premier's behalf. (Lube Dep. at 51.) Also, according to Lube, PBS provided Premier employees with a company handbook that they were required to follow. (Id. at 57-58.)

PBS retained a statutory right of control under Florida statute section 468.525(4)(a) and provided extensive human resources related services including frequent training. (See Ex. K to Plaintiffs' motion for partial summary judgment at PBS-173, 175, 177-181, 183-186, 188, 189, 192, 202, 205, 206, 208, 209, 210, 212, 213, 214, 215, 218, 219, 221, 224, 230, 232, 237-239, 241, 242, 244, 246; Starr Dep. at 57-58.)

**PBS Paragraph 8**:

"In regard to the actual working relationship between PBS and Premier, PBS did not, at any time, (a) recruit, (b) interview, (c) evaluate, (d) place, (e) assign, (f) determine the rate of pay for, (g) hire or fire, (h) direct or control or assign responsibilities and tasks to, or (i) supervise or evaluate the work of Plaintiffs…at no time during the business relationship between Premier and PBS was PBS required to pay Premier employees due to Premier's failure to pay its employees."

**PBS Paragraph 10**:

> "...Premier or its branch offices *solely and exclusively*: (a) recruited and hired them...and determined how many persons to hire, (b) interviewed them, (c) trained them as to their job duties, (d) set their hours and work schedule, (e) maintained all records with respect to when the employee started his/her workday and when such employee ceased working on that day, (g) determined job description, (h) determined whether any employee would work more than 40 hours in any given workweek, and if so, how many hours the employee would work, (i) decided whether or not to report any overtime hours worked to PBS, or to conceal such information from PBS, (j) managed the worker's day-to-day activities and the details, method and mode of work for each worker, (k) determined what wages the employee would receive, and whether and when raises would be given, (l) determined how long a worker would be employed as a leased employee, (m) determined how much, if any, sick pay, vacation pay, bonus pay or commissions would be paid to workers, (n) determined for what offenses a worker would be discharged, (o) assigned the workers new tasks, and (p) determined the safety of any equipment to be used by the workers."

(Dkt. 96 at p. 5.)

**Additional Material Facts**: Florida law requires employee leasing companies to retain "authority to hire, terminate, discipline, and reassign the leased employees." Fla. Stat. § 468.525(4)(d). The CSA provides:

> PBS retains authority to hire, terminate, discipline, and reassign Covered Employees.

(Ex. D to Plaintiffs' motion for partial summary judgment, § 8.04.) The CSA also allows PBS to preclude Premier from hiring anyone in living and working in New Hampshire. (Ex. D to Plaintiffs' motion for partial summary judgment, § 8.10.) In addition, PBS exerted indirect control over Premier's hiring practices by providing employee practices and job description training. (Starr Dep. at 20-22) PBS also exercised indirect control over termination decisions by providing Premier with one-on-one consultations regarding specific terminations. (Id. at pp. 17, 22, 41-42, 51-52, 56-57; Ex. J to Plaintiffs' motion for partial summary judgment; Ex. K to Plaintiffs' motion for partial summary judgment at PBS-173, 175, 177-181, 183-186, 188, 189, 192, 202, 205, 206, 208, 209, 210, 212, 213, 214, 215, 218, 219, 221, 224, 230, 232, 237-239,

241, 242, 244, 246.) Starr also spoke with upper management regarding their compliance with the Worker Adjustment and Retraining Notification Act in the event of a mass layoff. (Starr Dep. at 59-60.)[4]

According to Cugno and Lube, PBS took an active role in the management of employee matters and acted as Premier's HR Department. (Cugno Dep. at 29; Lube Dep. at 55-56.) Also, though PBS did not decide when to terminate an employee, PBS did act as a witness when a Premier employee was terminated. (Cugno Dep. at 33.) Moreover, Cugno stated "if someone did something so bad off the wall" it is possible that PBS could speak to a Premier department head about having that employee terminated. (Id.)

PBS retained a statutory right to hire, fire, and modify employees' work conditions under Florida Statute section 468.525(4)(d), and took an active role in managing human resource matters.

PBS had the power to, and exercised control over, Plaintiffs' rate of pay by administering workers' compensation benefits for Premier. (Hill Dep. at 39-43.) PBS was considered Plaintiffs' employer. (Id. at 49.) PBS retained the sole authority to determine how it would categorize Plaintiffs for workers' compensation purposes. (Ex. D to Plaintiffs' motion for partial summary judgment.) PBS also exercised control over Plaintiffs' rate of pay by administering health insurance benefits. (Hill Dep. at 66.) PBS secured health insurance for Plaintiffs and held itself out as Plaintiffs' employer to Aetna – Plaintiffs' health insurance company. (Id.)

PBS exercised authority over Plaintiffs' rate of pay. Cugno testified that PBS was involved in deciding whether an employee would be classified as exempt or non-exempt. (Cugno Dep. at 36-37.) Cugno also stated that it was his understanding that part of PBS's job was to

---

[4] See also Ex. O to Plaintiffs' motion for partial summary judgment ("An employee will **NOT** be terminated until a **COMPLETED** Worksite Employee Change Form is received.").

6

make sure people were being paid properly. (Id. at 81.) In fact, Cugno acknowledged that Premier management went to PBS with questions on how to pay and classify Premier employees. (Id. at 82.) Lube also stated that it was his understanding that PBS checked to make sure Premier had properly classified its employees. (Lube Dep. at 37.) Lube stated that no one at Premier's corporate office would have had the requisite knowledge of the FLSA to correctly classify people, which is why Premier hired PBS. (Id. at 52-53.) Starr stated that several people at Premier, including Cugno, called her to ask how employees should be classified. (Starr Dep. at 44.) She provided them with FLSA resources. (Id. at 44.) PBS also provided Premier with staff training on the FLSA, including the exempt and non-exempt statuses under the law. (Id. at 43.) Finally, Starr's emails in June 2005 and PBS's computer log notes (which repeatedly show the topic of the FLSA being discussed) demonstrate that PBS was actively involved in classification decisions. (Exs. Q and R to Plaintiffs' motion for partial summary judgment.)

Under Florida law employee leasing companies are required to pay their leased employees regardless of whether they have received payment from their client companies. Fla. Stat. § 468.525(4)(b). The CSA provides:

> PBS assumes responsibility for the payment of wages to Covered Employees without regard to payment by Client to PBS.

(Exhibit D to Plaintiffs' motion for partial summary judgment, § 8.02.) PBS was responsible for the preparation of payroll and the payment of taxes, worker's compensation premiums, and wages. (Ex. D to Plaintiffs' motion for partial summary judgment; Hill Dep. at 39-43, 75.) PBS was also responsible for maintaining a recordkeeping system and would issue a daily report to Premier officials to keep them apprised of employee turnover. (Hill Dep. at 21-22.) Moreover, there is evidence that PBS paid Premier's employees without first receiving payment from Premier as part of their actual working relationship. According to Hill, Premier's branches were

sometimes unable to pay PBS the money required for the payment of employee wages, taxes and other fees. (Hill Dep. at 76-77.) PBS would then collect the necessary funds from Premier's corporate office. (Id. at 77.) Hill stated that when exactly PBS would draw from the corporate account would depend, and in some instances it could have happened after the Covered Employees had been paid by PBS. (Id. at 78.)

**PBS Paragraph 11**:

"As part of her responsibilities, Ms. Starr provided human resources-related training for managers and supervisors at Premier's corporate office."

(Dkt. 96 at p. 6.)

**PBS Paragraph 13**:

"One example of the training that Ms. Starr provided to Premier was Fair Labor Standards Act training."

(Dkt. 96 at p. 6.)

**Additional Material Facts**: As to training and seminars, Starr testified that by 2006 she tried to do trainings once a week. (Starr Dep. at 49.) Attached as Exhibit M to Plaintiffs' motion for partial summary judgment is a report of the trainings that PBS conducted for Premier employees from 2005 through 2007. (Ex. M.) Starr conducted trainings at Premier's corporate office and by telephone. (Starr Dep. at 17.) She recalled conducting training for branch employees (like Plaintiffs) over the telephone. (Id. at 18.) PBS trained Premier employees on the following topics: non-harassment; preventing violence in the workplace; diversity in the workplace; great customer service; hiring practices; performance appraisal training; antidiscrimination training; workplace investigative training; effective discipline and termination training; FLSA training; family medical leave training; and top 10 HR training. (Id. at 20-22; Ex. J to Plaintiffs' motion for partial summary judgment at PBS 00147-153.)

**PBS Paragraph 14**:

"At no point during the relationship between Premier and PBS did Ms. Starr or anyone at PBS make decisions for Premier on exemption classification for their loan officers or other employees. Rather, PBS only provided the Premier corporate office with relevant resources and best-practices advice to assist them in making classification determinations."

(Dkt. 96 at p. 7.)

**Additional Material Facts**: In an email dated June 10, 2005 to others affiliated with PBS Starr states in part: "I am not comfortable to **continue to try to fit** these employees in a class that DOL has already denied." (Ex. Q to Plaintiffs' motion for partial summary judgment.) (emphasis added.) In an email dated June 3, 2005 to Raymond Savoy, Starr (discussing the outside sales exemption) stated in part "If they have people that truly fall in this category, I do not know how **we** can refuse to let them use the category." (Ex. R to Plaintiffs' motion for partial summary judgment.) (emphasis added.) Importantly, Cugno testified that PBS sometimes would classify employees as exempt or non-exempt employees. (Cugno Dep. at 36.) Cugno believed that it was part of PBS's responsibilities that Premier employees were paid correctly. (Id. at 81.) Cugno relied on PBS to ensure Premier employees were paid properly. (Id. at 81-82; 106.) This was one reason why Premier paid PBS. (Id. at 106.)

**PBS Paragraph 17**:

"PBS did not create a specific Employee Handbook or job descriptions for Premier."

(Dkt. 96 at p. 7.)

**Additional Material Facts**: There is evidence to suggest that PBS (and Starr specifically) provided some type of handbook to Premier employees. (Ex. K to Plaintiffs' motion for summary judgment at PBS 206, 213.) Also, Lube testified that PBS provided Premier with a

9

company handbook that was distributed to all Premier employees and that every employee was required to follow. (Lube Dep. at 57-58.)

There are other facts that are absolutely necessary in any analysis on whether PBS is an employer under the FLSA. Hill testified that for the tax, workers' compensation, and health insurance services PBS provided to Premier, PBS was Plaintiffs' employer. (Hill Dep. at 39-43; 66.)

As to the tax services provided, PBS is identified as Plaintiffs' employer on Plaintiffs' W-2 forms. (Ex. G to Plaintiffs' motion for partial summary judgment.; Ex. AA, Morgan Dec.) Indeed, the W-2 form does not even identify Premier as Plaintiffs' employer. (Ex. G.) PBS has also made representations to various state tax authorities that it is Plaintiffs' employer. In a letter dated August 16, 2006 from PBS to Michigan's Department of Labor & Economic Growth, for example, PBS stated:

> This letter is to inform you that Premier Mortgage Funding, Inc…has entered into a leasing arrangement with PBS…**Employees previously employed by Premier…are now employed by and reported under PBS…**[.]

(Ex. H to Plaintiffs' Motion for Partial Summary Judgment.) (emphasis added.)

As to the workers' compensation services, Hill stated, "We act as an employer in that capacity to provide the workers' comp. services to our client." (Hill Dep. at 49.) To that end, the CSA provides PBS with the sole authority to classify Plaintiffs for purposes of securing workers' compensation insurance:

> PBS retains the sole authority to establish workers' compensation classification codes for all Covered Employees and Self-employed Individuals based on the information provided to it by Client.

(Ex. D to Plaintiffs' motion for partial summary judgment, § 4.01.) Hill acknowledged that PBS bears the risk, not Premier, with regard to the workers' compensation policy purchased for Plaintiffs. (Hill Dep. at 58-59.)

Finally, as to the health insurance services, PBS submitted documents to Aetna (Plaintiffs' health insurer) wherein PBS held itself out as Plaintiffs' employer. (Id. at 66.)

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Indeed, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). And even in the case of employer liability under the FLSA, where the question is one of federal law that requires the district court to make factual findings, summary judgment should be denied where there are genuine issues of material fact. Russell v. Promove, LLC, 2007 WL 2274770, * 7 (N.D. Ga. Aug. 7, 2007).

### II. DEFENDANT PBS'S MOTION SHOULD BE DENIED

#### 1. Consideration of the Client Services Agreement

PBS urges this Court to practically ignore the contractual duties and obligations contained in the CSA with Premier because PBS knows that if they are considered, there is only one conclusion: PBS is an employer under the FLSA. (Dkt. 96 at pp. 9-10.)

Notwithstanding the case law referenced by PBS, the CSA must be considered in the Court's analysis. First, it established the professional relationship with Premier. All of the services PBS performed for Premier (that PBS even acknowledges performing) stem from the duties and obligations in the CSA. It is entirely inconsistent to consider certain duties and obligations and ignore others. Second, Hill testified under oath that PBS performed, and was paid to perform, all of the duties and obligations contained in the CSA. To the extent PBS performed duties and obligations under the CSA, and got paid for doing so, consideration of all of the terms is essential to the "economic realities" analysis. Third, many of the duties and obligations in the CSA are statutory requirements for PBS to be considered an employee leasing company. Thus, if PBS does not adhere to, and perform, certain obligations under Florida law, PBS cannot benefit as an employee leasing company. See Fla. Stat. § 468.525 (license requirements for employee leasing companies); see also Fla. Stat. § 468.532(1)(r) (an employee leasing company may be penalized for failing to meet or maintain any licensure requirements). And many of the statutory requirements in the CSA are relevant to the Antenor v. D & S Farms economic realties test. For example, Antenor factor three queries whether PBS had the right to hire, fire or modify a worker's employment conditions. Antenor, 88 F.3d 925, 932 (11th Cir. 1996). Section 8.04 of the CSA give PBS the authority to hire, terminate, discipline and reassign covered employees. And Section 8.01 gives PBS the right of direction and control over covered employees.

The CSA is absolutely relevant to the economic reality test and all of PBS's duties and obligations under the CSA must be considered. Ignoring the CSA renders the professional relationship, and the services PBS performed for Premier and its employees (including Plaintiffs), meaningless.

### 2. Antenor Factors

Plaintiffs rely on their Antenor factor analysis in their motion for partial summary judgment and ask the Court to take judicial notice of such analysis when considering PBS's motion. Several of PBS's arguments, nonetheless, warrant discussion here.

With regard to Antenor factors three (right to hire, fire or modify worker's employment conditions) and four (power to determine pay rates or methods of payment), PBS ignores the plain language of the factors and relies on self-serving Declarations to support its contention that such factors do not apply. To show that factor three renders PBS an employer requires evidence that PBS had the *right* to hire, fire or modify worker's employment conditions, not that PBS actually did. Antenor, 88 F.3d at 932. There is no question PBS had the *right* to hire, fire or modify worker's employment conditions. Section 8.04 plainly states that PBS retains the authority to hire, terminate, discipline and reassign covered employees. Section 8.01 states that PBS has a right of direction and control over Premier employees. Section 8.10 precludes Premier from hiring employees in the State of New Hampshire without advance written consent of PBS. And Section 8.12 states that with regard to Louisiana employees, authority and responsibility to hire, fire, discipline and compensate are allocated to, and shall be between, PBS and Premier.

To show that Antenor factor four renders PBS an employer requires evidence that PBS had the *power* to determine pay rates *or* methods of payment, not that PBS actually did. Antenor,

13

88 F.3d at 932. Like factor three, there is no question PBS had the *power* to determine pay rates *or* methods of payment. Section 3.01 of the CSA gave responsibility to PBS to pay Plaintiffs' wages without regard to payment by Premier to PBS. It also provides PBS with full responsibility for the payment of payroll taxes and collection of taxes from payroll on Plaintiffs. Not only did PBS have the contractual responsibility to pay Plaintiffs' wages and payroll taxes, in reality it did. Moreover, Cugno testified that PBS sometimes would classify employees as exempt or non-exempt employees.[5] Cugno believed that it was part of PBS's responsibilities that Premier employees were paid correctly. Cugno relied on PBS to ensure Premier employees were paid properly as this was one reason why Premier paid PBS.

### 3.   **Consideration of Statutory Requirements**

To provide services to Premier pursuant to the CSA, PBS must obtain a license with the State of Florida. See Fla. Stat. § 468.526(1). If PBS does not comply with the requirements in section 468.525 of the Florida statutes, it subjects itself to disciplinary action by the State of Florida. See Fla. Stat. § 468.532(1)(r). The statutory requirements in 468.525 include, in part, those that are listed in Section 8 of the CSA. See Fla. Stat. § 468.525(4). Florida law requires PBS to:

- Reserve a right of direction and control over leased employees assigned to the client's location.

- Assume responsibility for the payment of wages to the leased employees without regard to payments by the client to the leasing company.

- Assume full responsibility for the payment of payroll taxes and collection of taxes from payroll on leased employees.

- Retain authority to hire, terminate, discipline, and reassign the leased employees.

---

[5] Under oath at her deposition, and by Declaration, Crystal Starr has represented that PBS did not make classification decisions. PBS even asserts that the "undisputed record evidence" shows PBS did not make classification decisions. Yet Cugno testified under oath that PBS did make classification decisions, and emails from Starr to others at PBS indicate Starr believed PBS was involved in classification decisions.

- Retain a right of direction and control over management of safety, risk, and hazard control at the worksite or sites affecting its leased employees, including:

    (1) Responsibility for performing safety inspections of client equipment and premises.
    (2) Responsibility for the promulgation and administration of employment and safety policies.
    (3) Responsibility for the management of workers' compensation claims, claims filings, and related procedures.

- Has given written notice of the relationship between the employee leasing company and the client company to each leased employee it assigns to perform services at the client's worksite.

Id.

These statutory requirements are very real and deemed by the state of Florida to be necessary for companies to qualify as employee leasing companies. They are not superfluous as PBS would like this Court to believe. Indeed, the Middle District of Florida recognized the importance of state requirements for determining questions of federal law in United States v. Total Employment Co., when the court determined that the defendant employee leasing company was an employer because of its statutory and contractual obligations to pay employee-related taxes. 305 B.R. 333, 341 (M.D. Fla. 2004).

Plaintiffs are not asking this Court to do anything more than what the Total Employment Co. court did—recognize that each and every statutory and contractual obligation of PBS to Premier is significant and must be considered in the analysis of whether PBS is an employer under the FLSA. When considered, there is no question PBS is Plaintiffs' employer.

**4.    The Depositions of Defendant Cugno and Jeremy Lube are Admissible and Can be Used to Prove PBS's Status as an Employer in this Case.**

15

Notwithstanding the fact that PBS has known about the depositions of Defendant Cugno and Jeremy Lube since it was served with the original complaint in this case[6], and obtained copies of the deposition transcripts no later than December 20, 2007 (many months before the close of discovery)[7], PBS now incredibly argues Plaintiffs are precluded from utilizing testimony of Cugno and Lube because PBS was not a party to the previous lawsuit and lacked the opportunity to cross-examine either witness.

PBS incorrectly relies on Fed. R. Civ. P. 32(a)(4) and subsequent case law to support this argument. Fed. R. Civ. P. 32(a)(4) does not refer to the use of prior deposition testimony, but rather the court's treatment of unavailable witnesses. Assuming PBS believes the previous Fed. R. Civ. P. 32(a)(4), now amended to Fed. R. Civ. P. 32(a)(8), precludes the admissibility of the deposition testimony, it is plain wrong. Indeed, the amendment renders the cases cited by PBS moot because Fed. R. Civ. P. 32(a)(8) includes a provision that allows for the inclusion of this testimony: "A deposition previously taken may also be used as allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 32(a)(8). The Federal Rules of Evidence allow hearsay testimony, such as depositions from a previous case, if the party attempting to introduce the evidence fulfills certain requirements. Fed. R. Evid. 807. First, the party must demonstrate that:

> (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807. Second, the party wishing to introduce the deposition must make its attempt known to the opposing party sufficiently in advance of the trial to provide the opposing party with sufficient time to prepare for the testimony. Id. Additionally, the proponent must provide

---

[6] (Dkt. 1 at p. 3.) Indeed, PBS brought a motion to strike parts of Plaintiffs' complaint that contained references to the depositions of Cugno and Lube. (Dkt. 28.) The motion was denied. (Dkt. 47.)
[7] (Ex. BB, Morgan Dec.)

the opposing party the particulars of the statement and the name and address of the declarant. Fed. R. Evid. 807.

Plaintiffs have fulfilled the requirements of Fed. R. Evid. 807. The statements offered in the deposition were given as statements of material fact concerning the business relationship between PBS and Premier demonstrate that PBS is an employer within the meaning of the FLSA, 29 U.S.C. §203(d). The depositions were in response to a 30(b)(6) deposition of Premier and Cugno and Lube were produced as corporate representatives who spoke on certain company-related topics. (Ex. I to Plaintiffs' motion for partial summary judgment.) The deposition is more probative on the points for which it is offered than a subsequent deposition because the second deposition would likely involve the same questions and, presumably, the same answers. To delay and repeat the same questions is inefficient and expensive for all parties. Moreover, at any point in this case, PBS (with knowledge of what Cugno and Lube testified to about PBS's role) could have taken Cugno's or Lube's depositions. It chose not to. It cannot now argue the testimony should be precluded because it was not a party in the first case against Premier and did not have an opportunity to cross-examine these witnesses.

As to the remaining requirements, the original complaint referenced the existence of these depositions and Plaintiffs' reliance on such depositions. (Dkt. 1.) Plaintiffs then provided PBS with a copy of the deposition transcripts in their responses to PBS's discovery requests. (Ex. BB; Morgan Dec. ¶3.) Those transcripts provided PBS with the particulars of the testimony along with the identities of the declarants.

In an analogous case, the court concluded that a party could use earlier deposition testimony by a declarant who was not a party to the suit even if the party could re-depose the declarant. See United States v. Skilling, 2006 WL 1155566 (S.D.Tex. 2006). The court

17

the opposing party the particulars of the statement and the name and address of the declarant. Fed. R. Evid. 807.

Plaintiffs have fulfilled the requirements of Fed. R. Evid. 807. The statements offered in the deposition were given as statements of material fact concerning the business relationship between PBS and Premier demonstrate that PBS is an employer within the meaning of the FLSA, 29 U.S.C. §203(d). The depositions were in response to a 30(b)(6) deposition of Premier and Cugno and Lube were produced as corporate representatives who spoke on certain company-related topics. (Ex. I to Plaintiffs' motion for partial summary judgment.) The deposition is more probative on the points for which it is offered than a subsequent deposition because the second deposition would likely involve the same questions and, presumably, the same answers. To delay and repeat the same questions is inefficient and expensive for all parties. Moreover, at any point in this case, PBS (with knowledge of what Cugno and Lube testified to about PBS's role) could have taken Cugno's or Lube's depositions. It chose not to. It cannot now argue the testimony should be precluded because it was not a party in the first case against Premier and did not have an opportunity to cross-examine these witnesses.

As to the remaining requirements, the original complaint referenced the existence of these depositions and Plaintiffs' reliance on such depositions. (Dkt. 1.) Plaintiffs then provided PBS with a copy of the deposition transcripts in their responses to PBS's discovery requests. (Ex. BB; Morgan Dec. ¶3.) Those transcripts provided PBS with the particulars of the testimony along with the identities of the declarants.

In an analogous case, the court concluded that a party could use earlier deposition testimony by a declarant who was not a party to the suit even if the party could re-depose the declarant. See United States v. Skilling, 2006 WL 1155566 (S.D.Tex. 2006). The court

concluded that the depositions were admissible under F. R. Evid. 807 because they were given under oath, they concerned material facts, and they were more probative than a subsequent deposition of the same party. Id. at *8, n.42. Additionally, the court determined there was little risk of introducing the deposition testimony when the deposition sought to develop facts to initiate further proceedings. Id. at *8. Skilling is similar to the present case because the testimony at issue was under oath and concerned material facts. Additionally, in both cases, the depositions revealed information that could form the basis of a subsequent legal claim.

There is no doubt that the depositions are admissible under Civil Procedure Rule 32(a)(8) and Rule of Evidence 807 and can be used by Plaintiffs in support of their motion for partial summary judgment as well as in opposition to PBS's motion for summary judgment.

## CONCLUSION

PBS's motion for summary judgment against should be denied as there are many PBS material facts in dispute as to whether PBS is an employer under the FLSA.

RESPECTFULLY SUBMITTED this 27th day of May, 2008.

**NICHOLS KASTER & ANDERSON, PLLP**

s/ Matthew H. Morgan
Donald H. Nichols, MN Bar No. 78918*
Paul J. Lukas, MN Bar No. 22084X*
Matthew H. Morgan, MN Bar No. 304657*
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Fax (612) 215-6870
* Admitted *pro hac vice*

        Matthew Fenton, Fla. Bar No. 0002089
        WENZEL & FENTON, P.A.
        633 N. Franklin Street, Suite 500
        Tampa, Florida 33602
        Telephone (813) 224-0431
        Fax (813) 229-8712
        mfenton@wenzelfenton.com

        ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing document has been filed with the Clerk of the Court on May 27, 2008 by using the CM/ECF system which will send a notice of electronic filing to:

Matthew Fenton
WENZEL & FENTON, P.A.
633 N. Franklin Street, Suite 500
Tampa, FL 33602

Benjamin James Mollo
PREMIER MORTGAGE FUNDING
3001 Executive Dr., Suite 330
Clearwater, FL 33762

Edward Diaz
Erika R. Royal
HOLLAND & KNIGHT, LLP
701 Brickell Ave - Ste 3000
Miami, FL 33131-5441

Eric P. Berezin
Toni Read
DUANE MORRIS LLP
1180 West Peachtree Street, Ste. 700
Atlanta, GA 30309

s/Matthew H. Morgan
Matthew H. Morgan
