UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEANA VONDRISKA and
JENNIFER ANDREWS

    Plaintiffs,

v.                                    CASE No. 8:07-CV-1322-T-24TGW

PAYCHEX BUSINESS SOLUTIONS,
INC., and GERALD CUGNO,

    Defendants.

_____

## REPORT AND RECOMMENDATION

The plaintiffs allege that Gerald Cugno violated the Fair Labor Standards Act ("FLSA") by failing to pay them minimum and overtime wages. The plaintiffs and Cugno have filed cross-motions for summary judgment on the threshold issue of whether Cugno was the plaintiffs' employer under the FLSA (Doc. 98, 100). Because factual issues exist as to whether Cugno exercised sufficient control over the company's operations to render him an employer under the FLSA, I recommend that Cugno's and the plaintiffs' motions for summary judgment be denied.

I.[1]

A. Plaintiffs Deana Vondriska and Jennifer Andrews were employed as loan officers by Premier Mortgage Funding, Inc. ("Premier"), a mortgage lending company whose corporate headquarters is located in Clearwater, Florida (Doc. 114, p. 14, ¶ 1).[2] Prior to filing for bankruptcy, Premier had approximately 500 affiliated branch locations in 42 states (id.).[3] Vondriska worked as a loan officer in Premier's Middleburg, Ohio, office from January 2005 until May 2005 (Doc. 108-2, p. 6). Andrews was employed as a loan officer in Premier's Indianapolis, Indiana, branch from the Fall of 2004 until August 2005 (Doc. 97-4, p. 9).

Defendant Cugno is the majority owner and Chief Executive Officer of Premier (Doc. 98-3, pp. 6, 8). He owns about seventy percent of its stock (id., p. 8). Cugno has characterized himself as "probably one of the biggest working CEOs in this country" who, along with Premier's operations

---

[1]Cugno refers in his memoranda to a Branch Manager Employment Agreement. That agreement is not mentioned in the fact summary or legal analysis because it has been stricken from consideration on summary judgment (see Doc. 145).

[2]The pagination refers to the page numbers on the CM/ECF document.

[3]As of April 2008, Premier had four employees (Doc. 119-2, p. 2, ¶ 17).

chief Jeremy Lube, made "all significant decisions ... at the company" (id., pp. 17, 29). Cugno stated that his workdays were twelve to thirteen hours long, during which he handled an average of over one hundred telephone calls daily (id., pp. 30-31). Those telephone calls included conversations with individual branches and employees (id., p. 30).

Cugno made decisions regarding hirings and terminations at the corporate level (id., pp. 15-16, 18-19; Doc. 11-4, p. 17, ¶¶ 15, 17). At the branch level, Cugno had input regarding who became a Premier branch manager (Doc. 111-4, p. 17, ¶ 18). Further, if it came to Cugno's attention that any employee in the company did something wrong, he had the power to terminate that person's employment (Doc. 98-3, p. 23).

With regard to employee work hours, Cugno stated that he "had a policy. There was no overtime anywhere in this country" (id., pp. 25-26). Cugno specified in a memorandum the work hours for non-exempt employees (Doc. 98-7, p. 3).

Cugno also participated in determining Premier's payroll, wage and classification policies. Thus, Cugno was involved in the decision to hire a payroll company, and required that all employees register with the payroll

company (see Doc. 98-9; Doc. 98-3, pp. 35-36; Doc. 111-4, p. 15). Memoranda from Cugno to branch managers set forth payroll requirements for employees, including classification of loan originators as W-2 employees, and Cugno directed that loan officers who were not independent contractors could not be paid on a commission-only basis (Doc. 98-3, pp. 33-34; Doc. 98-6; Doc. 98-7).

With regard to FLSA classifications, Cugno stated that he did not consider declaring all of the branch employees as non-exempt because there were a lot of people who worked outside the office (Doc. 98-3, p. 41). In a memorandum from Cugno to Premier employees entitled "Employee work hour, wage and classification policy," guidelines were set forth to determine whether an employee was an outside sales employee or a non-exempt employee (see Doc. 98-7). Further, Cugno arranged for each branch manager to be flown to the corporate office for training on payroll and operational issues, and Cugno participated in such meetings (see Doc. 98-3, pp. 32-33).

Additionally, Cugno had dealings with the Department of Labor on several occasions regarding employee complaints about overtime and minimum wages (Doc. 98-3, pp. 38-39; see, e.g., Docs. 98-12, 98-13).

In 2004, Cugno took a bus tour during which he personally visited some of his branches to discuss with branch managers mortgage and branch related topics (Doc. 98-3, p. 28; Doc. 111-4, p. 17, ¶ 19).[4] However, Cugno was not personally aware of what was going on in each branch on a daily basis (Doc. 98-3, p. 9). Rather, the branch managers controlled the operations of the branch offices with regard to the hiring and firing of employees, their supervision, and the computation of work hours (Doc. 111-4, pp. 14-17, ¶¶ 3, 4, 16; Doc. 100-5, p. 2, ¶¶ 1, 4). Premier employees would check periodically on the branch offices to review the number of people working there, peruse files for fraud, and make sure the proper signage was displayed (Doc. 98-3, pp. 10-11, 14).

In particular, neither Vondriska nor Andrews interacted with Cugno, and Cugno had no role in their employment with Premier (see Doc. 111-3, pp. 33-37, ¶¶ 5-6, 10, 12, 14; Doc. 108-2, pp. 6-7, 9-10, 13). Thus, branch manager Karen Thompson hired Andrews, and determined her commission and job responsibilities (Doc. 111-3, pp. 33-34, 38, 45, 47).

---

[4]Cugno indicated that, during the bus tour, he checked if employees were properly classified as exempt under the FLSA (Doc. 98-3, p. 28).

Branch manager Keith Allman determined Vondriska's job duties, supervised her work and informed Vondriska of her commission percentage (Doc. 108-2, pp. 6-7, 9-10). Ultimately, Allman terminated Vondriska's employment (id., p. 6).

B. The plaintiffs originally filed a lawsuit in this court against Premier, alleging that it violated the FLSA by failing to pay the plaintiffs minimum and overtime wages (Case No. 8:06-CV-1492-T-27MAP, Doc. 1). On July 3, 2007, Premier filed for bankruptcy (id., Docs. 70, 74). The day prior to Premier's bankruptcy filing, the plaintiffs filed a motion to amend their complaint to add as defendants Cugno, Paychex Business Solutions ("PBS"), and Gevity HR, Inc. (Doc. 69). However, due to Premier's bankruptcy, the case was administratively closed, and all pending motions denied as moot (Doc. 74).

Consequently, the plaintiffs filed this lawsuit against defendants Cugno, PBS, and Gevity HR, Inc., alleging that they violated the FLSA by failing to pay the plaintiffs minimum and overtime wages (Docs. 1, 78).[5] The

---

[5] The latter defendants are employee leasing companies who contracted with Premier to provide payroll services for Premier's employees. The plaintiffs settled their lawsuit against Gevity HR, Inc. (Docs. 132, 133).

plaintiffs seek recovery of unpaid back wages, liquidated damages, and their attorneys' fees and costs (Doc. 78, p. 5). They also seek to certify this matter as a class action (Doc. 78).

Cugno disputes that he was the plaintiffs' employer under the FLSA. Cugno and PBS moved to bifurcate discovery into two phases to determine the threshold issue of whether they were "employers" before litigating the merits of the lawsuit (Docs. 43, 62). The court granted the motion to bifurcate, noting that "resolution of a preliminary motion [on the employer] issue may dispose of the entire action" (Doc. 62, pp. 2-3).

In accordance with the scheduling order (id.), the parties conducted discovery on the issue of whether the defendants were employers under the FLSA and, thereafter, the parties filed motions for summary judgment on this issue (Docs. 96, 98, 99, 100). The motions were referred to me for a report and recommendation (Doc. 112). Oral argument was subsequently held on these motions (see Doc. 143).

II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

When the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial, or, alternatively, it may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991).[6] If the moving

---

[6]The plaintiffs have the burden of proving that the defendant was their employer. Martinez-Mendoza v. Champion Int'l Corp., 340 F.3d 1200, 1209 (11th Cir. 2003).

party does not meet its burden, then the motion for summary judgment will be denied. Id.

When the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, supra, 941 F.2d at 1438.

When the party moving for summary judgment has the burden of proof at trial, it must affirmatively show the absence of a genuine issue of material fact by presenting credible evidence that would entitle it to a directed verdict if the evidence was not controverted at trial. Id. If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437-38. If the movant meets its initial burden, then it is entitled to summary judgment unless the nonmoving party comes forward with "significant probative evidence demonstrating the existence of a triable issue of fact." Id. at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469. Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

### III.

As indicated, the plaintiffs allege that Cugno violated the FLSA, 29 U.S.C. 201, et seq., by failing to pay them minimum hourly and overtime wages (Doc. 78, p. 4). They also allege that Cugno failed to document, report and preserve records of their work hours (id.).

The issue presented by the parties' cross-motions for summary judgment is not the merits of these allegations, but the threshold issue of whether Cugno was their employer under the FLSA. 29 U.S.C. 203(d); see Patel v. Wargo, 803 F.2d 632, 635 (11th Cir. 1986)(Liability under the FLSA is predicated upon the existence of an employer-employee relationship.). The plaintiffs allege in their motion that they were employed jointly by Premier

and Cugno. Cugno argues in his memoranda that Premier was the plaintiffs' sole employer.

The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. 203(d). Under the FLSA, a worker may simultaneously have several employers. 29 C.F.R. §791.2; Falk v. Brennan, 414 U.S. 190 (1973). Specifically, a corporate officer may be considered an employer, although "it should not lightly be inferred that Congress intended to disregard ... the shield from personal liability which is one of the major purposes of doing business in the corporate form." Patel v. Wargo, supra, 803 F.2d at 636.

It is well settled that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008). This requires that the officer "either be involved in the day-to-day operation or have some direct responsibility for the supervision of the

employee." Id. In this case, Cugno did not have direct responsibility for the supervision of the plaintiffs, but there is some evidence that Cugno had operational control over Premier because he was involved in its day-to-day operations, at least at the corporate office.

To be classified as an employer on this basis, the corporate officer must "have operational control of <u>significant aspects</u> of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee." <u>Alvarez Perez</u> v. <u>Sanford-Orlando Kennel Club, Inc.</u>, <u>supra</u>, 515 F.3d at 1160 (emphasis added). No one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case. <u>Antenor</u> v. <u>D&S Farms</u>, 88 F.3d 925, 932-33 (11th Cir. 1996). Further, "it is not required that [the corporate officer] have exclusive control of a corporation's day-to-day functions." <u>Alvarez Perez</u> v. <u>Sanford-Orlando Kennel Club, Inc.</u>, <u>supra</u>, 515 F.3d at 1161-62 (quoting <u>Dole</u> v. <u>Elliott Travel & Tours, Inc.</u>, 942 F.2d 962 (6th Cir. 1991)). On the other hand, "unexercised authority is insufficient to establish liability [on a

corporate officer] as an employer." Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., supra, 515 F.3d at 1161.

The plaintiffs presented evidence that Cugno was actively engaged in Premier's business and employment affairs. Indeed, Cugno, the company's CEO and principal stockholder, characterized himself as "probably one of the biggest working CEOs in this country" (Doc. 98-3, pp. 6-8, 29). In this regard, Cugno stated that he worked twelve to thirteen hours a day, and that he, along with Lube, made "all significant decisions ... at the company" (id., pp. 17, 29-31; see also Doc. 98-4, p. 7).

In particular, he made hiring and firing decisions within Premier's corporate office (Doc. 98-3, pp. 15-16, 18-19; Doc. 111-4, p. 17, ¶¶ 15, 17). See Villarreal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997) (power to hire and fire is a factor in determining employer status). At the branch level, Cugno participated in determining the individuals that became Premier branch managers, and he had the power to terminate the employment of any Premier employee (Doc. 98-3, p. 23; Doc. 111-4, p. 17; ¶ 18). See Herman v. RSR Security Services Ltd., 172 F.3d 132, 140 (2nd Cir. 1999)

(hiring of managerial staff is a strong indication of control). Further, Cugno stated that he had consistent contact with the branch locations, testifying that he spoke with branch managers and employees on a daily basis (Doc. 98-3, pp. 30-31).

Moreover, there is evidence that Cugno participated in creating payroll, wage and FLSA classifications policies. See Villareal v. Woodham, supra, 113 F.3d at 205 (participation in conditions of employment and method of payment relevant to the employment relationship). Thus, there is evidence that Cugno dictated to the branch managers: (1) a no-overtime policy, (2) rules regarding employee hours and payroll processing, (3) criteria to determine whether an employee would be considered exempt under the FLSA regulations and (4) how employees needed to be designated for income tax purposes (see Doc. 98-3, pp. 25-26, 33, 35-36, 41; Doc. 111-4, p. 15, ¶ 14; Doc. 98-6; Doc. 98-7; Doc. 98-8; Doc. 98-9).

Further, Cugno stated that he had dealings with the Department of Labor on several occasions regarding employee complaints about overtime and minimum wages (Doc. 98-3, pp. 38-39). This shows his awareness of

wage and FLSA classification issues within his company. Also, Cugno had the power to, and ostensibly took steps to, rectify deficiencies in these areas (see Doc. 98-3, pp. 40-41; see, e.g., Doc. 98-12).

Cugno argues that he was not the plaintiffs' employer because he "has proffered a vast amount of evidence that shows that it was the branch manager who made the employer decisions regarding the plaintiffs" (Doc. 100, p. 15). Although there is no evidence that Cugno made employment decisions regarding the plaintiffs, this does not end the inquiry because, as indicated, a corporate officer may be liable if he is otherwise involved in the company's day-to-day operations. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., supra, 515 F.3d at 1160. Therefore, Cugno has failed to show presently that, as a matter of law, he was not the plaintiffs' employer. Accordingly, I recommend that Cugno's motion for summary judgment be denied.

On the other hand, Cugno has presented evidence which creates genuine issues of material fact regarding the extent of his operational control. This circumstance makes judgment as a matter of law in the plaintiffs' favor

also inappropriate at this stage of the litigation. See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., supra, 515 F.3d at 1160 (the corporate officer must "have operational control of significant aspects of the company's day-to-day functions").

Cugno has presented an affidavit stating that Premier's business model of decentralized branch offices was similar to a franchise relationship (Doc. 111-4, p. 14, ¶ 2), although he acknowledges that licensing requirements required that the branches be affiliated to a corporate entity (Doc. 100, p. 2). He, as well as his corporate attorney, aver further that the branches simply pay a flat monthly fee of approximately $1,650 and do not pay any portion of the profits generated by the branch offices (Doc. 111-4, p. 14, ¶¶ 1, 2; Doc. 119-2, p. 2, ¶ 10). The affidavits stated that the branch managers had responsibility for the day-to-day operations of their offices (Doc. 111-4, pp. 14-15, ¶¶ 1-3; Doc. 119-2, p. 1, ¶ 8).

Consequently, Cugno disputes that he controlled the branch affiliates where the plaintiffs were employed. Moreover, Cugno avers that he had no involvement in the hiring or firing of employees in the branch offices,

or in the assignment of their responsibilities, their supervision, or their compensation (Doc. 111-4, p. 15, ¶¶ 3, 4; id., p. 17, ¶ 16). Further, Cugno states that Premier's human resources department was run by PBS, and that PBS trained on payroll and human resources topics the branch managers who supervised the branch employees (Doc. 98-3, pp. 17, 32-33; see also Doc. 99-20, pp. 7, 10-11).

Cugno also controverts his control over employee wage and classification policies. Thus, Cugno testified that he did not determine whether an employee would be classified as exempt or non-exempt from FLSA minimum and overtime wage rules, but rather relied on the branch managers and the payroll company to make those decisions, as well as to confirm that the employees were being paid properly (Doc. 98-3, pp. 35, 37-38; Doc. 100-5, p. 2, ¶ 3; Doc. 111-4, p. 15, ¶¶ 3, 4; see also Doc. 99-20, pp. 6-9). Additionally, several of Cugno's directives regarding company wage and classifications policies are contained in memoranda which Cugno states that he did not draft and, in some instances, did not even review (Doc. 111-4, p. 15, ¶¶ 7, 8). Cugno also presents evidence that, although he was involved

in a few DOL investigations, his employees had primarily responsibility for handling these inquiries (id., p. 16, ¶¶ 12-14, 26; Doc. 98-3, pp. 38-39; see, e.g., Doc. 98-15 (other Premier employees handling inquiries regarding wage violations)).

In sum, Cugno disputes that he had day-to-day operational control over the branch offices and asserts that he was not the ultimate decisionmaker with regard to many of the corporate policies. Thus, although Cugno made grand statements regarding his corporate oversight at his deposition – a deposition that was taken before he was named a defendant – the specifics of his control are presently unclear. Therefore, it cannot be determined on this limited record whether Cugno was, as a matter of law, the plaintiffs' employer under the FLSA. See, e.g., Russell v. Promove, LLC, 2007 WL 2274770 at *7 (N.D. Ga. 2007)(denying summary judgment because genuine issues of material fact remained regarding the degree of control exercised by the CEO).

Accordingly, I recommend that the Plaintiffs' Motion for Partial Summary Judgment Against Defendant Gerald Cugno (Doc. 98) and

Defendant, Gerald Cugno's Motion for Summary Judgment (Doc. 100) be denied.

Respectfully submitted,

/s/ Thomas G. Wilson
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: JANUARY 26, 2009

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).